TIMOTHY MURPHY, Appellant, v. THE CITY OF ROME, Respondent.

Fourth Department, July 2, 1918.

Municipal corporations — waters and watercourses — negligence — liability of city for damage to land from overflow of sewer — breach of covenants in deed — evidence — burden of proof.

Where in an action by a landowner against a city for damages because of the overflow of the defendant's sewer, an admission by the plaintiff that the blocking of the sewer was due to the work of canal contractors, prevents any inference or presumption arising from the overflow that it was improperly constructed. It must also be assumed from such admission that the blocking of the sewer by the contractors and not the negligence of the city was the cause of the overflow, so that the city cannot be held liable for the breach of a covenant in a certain deed by which it agreed to pay all damages caused by its negligence.

The evidence was insufficient to permit the jury to infer negligence of the city in failing to have the obstruction in the sewer removed within a reasonable time after it had knowledge or notice thereof.

The city was not liable on the covenants in the deed upon mere proof of an overflow through one of the manholes at the surface so as to place the burden upon it of excusing itself from liability, but it was incumbent upon the plaintiff to show some negligence on the part of the city in looking after the sewer after it had been constructed.

KRUSE, P. J., dissented, with memorandum.

APPEAL by the plaintiff, Timothy Murphy, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Oneida on the 26th day of March, 1917, upon the dismissal of the complaint by direction of the court at the close of plaintiff's case, and also from an order entered in said clerk's office on the 23d day of March, 1917, denying plaintiff's motion for a new trial made upon the minutes.

W. E. Scripture & Sons [W. E. Scripture of counsel], for the appellant.

Albert J. O'Connor, for the respondent.

FOOTE, J.:

On July 1, 1903, about forty acres of land on the Mohawk river flats in or near Rome were conveyed to plaintiff and

Henry Wolfe by Emma A. Spink, as sole surviving executor of the last will and testament of Marshall H. Fisk, deceased. Through and along the westerly part of this land ran an outlet sewer from the city of Rome discharging into the Mohawk river. After passing through this land the sewer also passed through the lands of one Bloomfield J. Beach before reaching the river.

This action was brought to recover damages to the forty acres because of the overflow upon it of this sewer through one of the manholes in June and July, 1911. It is alleged that the city was negligent in permitting this overflow for a period of several months and in doing nothing to stop it; also for a breach of the covenant in the deed by which the city acquired the right to lay this sewer.

In granting the nonsuit the trial judge held, in substance, that the city could only be held liable on proof that the overflow was due to the negligence of the city, and that there was not sufficient proof in the plaintiff's case of such negligence to permit the submission of that question to the jury.

It appears by the complaint that Henry Wolfe conveyed his undivided one-half in the premises to the plaintiff on July 1, 1908. This fact, however, was not proved upon the trial, but it seems to have been taken for granted, and no point is raised as to the right of the plaintiff alone to maintain this action.

Prior to the deed to Murphy and Wolfe, the executors of the Marshall H. Fisk estate had conveyed to the city of Rome a right of way for this sewer by deed dated July 27, 1896, and recorded May 10, 1899. This deed granted to the city " The permanent and perpetual easement and right of way to build, lay, equip, keep, maintain, relay, repair and care for a sewer pipe and for all the uses and purposes of said sewer pipe in and through the following described lands, viz.: Twenty-five feet wide on each side of the following described center line in a straight direction entirely across said lands beginning on the southerly boundary line of lands of the New York Central and Hudson River Railroad Company at a point where said boundary line is intersected by the location survey line of the proposed eighteen inch outfall sewer of the Rome, New York, sewerage system, as said

sewer line was staked out on or about May 4, 1896; thence S. 4 degrees E. 976 feet more or less to the boundary line between the lands herein described and those of the Bloomfield J. Beach estate, and containing 1.12 acres of land more or less."

The following are the covenants contained in this deed upon which plaintiff contends the city became liable: " The said sewer pipe to be laid so low that the same shall not interfere with or affect the cultivation and use of the said lands, and the said sewer pipe to be so securely constructed and laid that there shall be no leakage or injury to the land or surroundings thereby. * * * And the party of the second part shall pay and discharge all damage that shall be done to the present crops of the tenant in possession, and all damage that shall hereafter arise from said sewer or use of same by the negligence of the city or its servants."

Although the land described through which this easement was created was a strip only twenty-five feet wide and contained only one and twelve one-hundredths acres, it is assumed by plaintiff and apparently not questioned by defendant that these covenants related to the whole forty acres and were not limited to the strip of land described. There is, however, nothing in the deed as printed in the record showing that the grantors then owned any other lands than the strip therein described. The Marshall H. Fisk estate did, no doubt, own the whole forty acres because the same executors conveyed the whole forty acres, including the strip to Murphy and Wolfe, in 1903. I shall assume, therefore, that the covenants were intended to be for the benefit and protection of the whole forty acres. In the deed from the executors to Murphy and Wolfe the grant is made expressly subject to the easement so granted to the city of Rome, and the terms of that grant are set forth in full in this deed.

I come then to the question as to whether the plaintiff made a case which he was entitled to have submitted to the jury. It appears by the complaint that the city of Rome completed the construction of this sewer in the year 1896. The proof does not show that there was any defect in the sewer as constructed, that it was not sufficiently large to perform its office, or that prior to the summer of 1911 it had failed to do so in any respect; nor is there any evidence that the

trouble which occurred in June and July, 1911, was caused by any defect or insufficiency in the sewer as originally constructed. Still, plaintiff's counsel seems to take the position that a defect in the construction can be inferred from the fact of the overflow in 1911. Perhaps this might be so if there was no other evidence in the case explaining the cause of the overflow at that time. It appears that a firm of contractors at that time was engaged in constructing the barge canal through the Bloomfield J. Beach lands which lie between plaintiff's lands and the Mohawk river. The excavation for this canal across the Beach lands was deeper than this sewer and cut it off and caused it thereafter to discharge into the barge canal instead of the Mohawk river. It was during the course of this work that the sewer became stopped up. The plaintiff himself as a witness admitted on cross-examination that this sewer became partially blocked up by reason of something which these canal contractors did. So strongly was he impressed that this canal construction work had caused the overflow of the sewer that he first presented a claim for damages against the State, but later withdrew it and brought suit against the contractors, but for some reason which does not appear he failed to recover.

The admission of Murphy that the blocking of the sewer was due to the work of these contractors prevents any inference or presumption arising from the overflow that it was not properly constructed. So I think there was no case for the jury for breach of the covenant in that respect.

But it is also urged that there was a breach of the later provision of the deed by which the city agreed to pay " all damage that shall be done to the present crops of the tenant in possession, and all damage that shall hereafter arise from said sewer or use of same by the negligence of the city or its servants."

Taking the admissions of the plaintiff above referred to that the barge canal contractors blocked the sewer, it must be assumed that such blocking was the cause of the overflow. Thus it was not caused by any negligence of the city or its servants. There is no proof in the case that it was caused by anything except the acts of the canal contractors. On

the face of this evidence, the jury could not be permitted to infer that it was otherwise caused, with no proof that it was found insufficient during the fifteen years that it was in use.

The only remaining question is whether there was sufficient evidence to permit the jury to infer negligence of the city in failing to have the obstruction in the sewer removed within a reasonable time after it had knowledge or notice of the obstruction. Upon that subject the testimony is quite vague and indefinite.

Plaintiff testifies that he notified the health board about three weeks after he first saw the overflow, but he does not say what action, if any, was taken, nor does he say that there was any overflow from the sewer after that time, although he does complain that his land had been covered to a large extent with sewage and left in a bad condition, the inference being that he applied to the board of health more because of the bad odors arising than for any other reason.

The learned counsel for the plaintiff seems to have spent all his energies at the trial upon the question of the extent and serious nature of the plaintiff's damages, rather than to establish defendant's liability. He seems to have assumed that the city was liable on the covenants in the deed upon mere proof of an overflow through one of the manholes at the surface, and that the burden was then upon the defendant to excuse itself from liability. I think such is not the case and that it was incumbent upon plaintiff to show some negligence on the part of the city in looking after this sewer after it had been constructed. For all that appears in this case the overflow which caused the damages may have occurred in one or two days. I think no case was made to go to the jury upon that question.

It follows that the nonsuit was properly granted.

The judgment and order must be affirmed, with costs.

All concurred, except KRUSE, P. J., who dissented in a memorandum; HUBBS, J., not sitting.

KRUSE, P. J. (dissenting):

The city agreed that the sewer pipe was " to be so securely constructed and laid that there shall be no leakage or injury

to the lands or surroundings thereby," and further to pay " all damage that shall hereafter arise from said sewer or use of same by the negligence of the city or its servants." The plaintiff seems to have thought the sewer was obstructed by a contractor in doing the barge canal work. But the evidence is very meager upon that point. But, assuming that it has been made to appear that the overflow was caused by the barge canal contractor obstructing the sewer, I think the evidence tends to show that the city was negligent in not removing the obstruction. While there are only a few instances when witnesses actually saw the sewage escaping through the manhole, the evidence shows that some of the plaintiff's lands were covered with sewage nearly all of one summer. I think the inference permissible from the circumstances that the sewer was obstructed a good part of the summer and sewage constantly cast upon plaintiff's land during that time, though I confess the evidence is not very satisfactory upon that point.

Judgment and order affirmed, with costs.